IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ACORN LAND, LLC d/b/a    :
PCS HOMES    :
   :
   v.    :
   : Civil Action No. CCB-09-422
BALTIMORE COUNTY, MD    :
   :

...o0o...

**MEMORANDUM**

Now pending before the court are two motions to dismiss, one filed by defendant Baltimore County, Maryland and one filed by defendant intervenor People's Counsel for Baltimore County[1] (collectively "defendants"), against plaintiff Acorn Land, LLC d/b/a PSC Homes ("Acorn" or "plaintiff"). Acorn is suing Baltimore County for engaging in a rezoning of

---

[1] People's Counsel for Baltimore County has moved to intervene and/or be joined in this lawsuit, pursuant to Federal Rules of Civil Procedure 19 and 24. People's Counsel has as a core statutory function the duty to:

> appear as a party before . . . the courts on behalf of the interests of the public in general, to defend any duly enacted master plan and/or comprehensive zoning maps as adopted by the county council, and in any matter or proceeding now pending or hereafter brought involving zoning reclassification and/or variance from or special exception under the Baltimore County Zoning Regulations, as now or hereafter in force and effect, in which he may deem the public interest to be involved.

Baltimore County Charter § 524.1(a)(3)(A). Given that this lawsuit involves a zoning reclassification dispute, the outcome of which may affect the enforcement of the Baltimore County master plan, People's Counsel has a clear interest in the proceedings. Accordingly, this motion will be granted. *See* Md. Code Ann., Cts. & Jud. Proc. § 3-405(a)(1) ("If declaratory relief is sought, a person who has or claims any interest which would be affected by the declaration shall be made a party"); *cf. Sec. Mgmt. Corp. v. Baltimore County, Md.*, 655 A.2d 1326, 1328 (Md. Ct. Spec. App. 1995) (noting without objection the Circuit Court for Baltimore County's allowance of People's Counsel to intervene in a zoning suit against Baltimore County).

1

its property that it alleges was preempted by Maryland state law (Count I); violated its right to due process under the Maryland constitution (Count II); and amounted to a taking without just compensation in violation of the federal constitution (Count III).  The issues in this case have been fully briefed and no hearing is necessary.  For the reasons stated below, the defendants' motions to dismiss will be granted.

## BACKGROUND

The following facts are presented in the light most favorable to Acorn.  In April 2004, Acorn acquired a tract of land within Baltimore County's Urban Rural Demarcation Line ("URDL")[2], comprised of approximately 33 acres and zoned Density Residential 1 ("DR-1").[3]  Later that month, Acorn submitted a petition to Baltimore County to amend the property's water and sewer classification, in order to allow hookup to water and sewer lines from the property.  The petition was evaluated by several county agencies, and all recommended that it be granted.  The Baltimore County Planning Board ("Planning Board") held a hearing on the petition in July, and in September it recommended to the Baltimore County Council ("Council") that the petitioned-for water and sewer classification changes be made.  In January 2005, the Council reviewed the Planning Board's recommendations on Acorn's property and several other properties and adopted the Planning Board's recommendations as to the other properties, but took no action on Acorn's property, with the result being that no change was made to the water

---

[2] Properties within the URDL are required to have access to public utilities such as water and sewer lines, though the degrees of access vary.

[3] Property zoned as DR-1 is meant to be used primarily for single family dwellings, and may accommodate one single family dwelling per acre.

2

and sewer classification of Acorn's property. No explanation has been provided for its inaction on the Acorn property recommendation (hereinafter "2004 reclassification recommendation").

On January 10, 2007, Acorn filed a complaint for writ of mandamus in the Circuit Court for Baltimore County to compel the Council to adopt the 2004 reclassification recommendation, claiming that the Council's failure to do so was an illegal action. On April 7, 2008, the Circuit Court issued a writ of mandamus ordering the Council to adopt the 2004 reclassification recommendation. The County filed an appeal on May 2, and filed a request to stay enforcement of the court's order on May 29, which was granted on June 18.

In the interim, the overall zoning status of Acorn's property was put before the Planning Board for review at the behest of Baltimore County Councilman S.G. Samuel Moxley. In November 2007, he submitted a petition to Baltimore County, referred to as Issue 1-054, requesting that approximately 316 acres of property zoned as DR-1 – property that included all of Acorn's property – be rezoned as Agricultural Protection 2 ("RC-2")[4] as part of Baltimore County's 2008 Comprehensive Zoning Map Process ("2008 CZMP"). On April 24, 2008, the Planning Board held a work session on Issue 1-054 and several other petitions and recommended that roughly 80 of the acres in Issue 1-054 remain DR-1, including Acorn's property, and that the remainder be rezoned as Rural Residential ("RC-5")[5]. The Council reviewed these recommendations on August 26, 2008, and decided to keep only about 42 of the 316 acres in

---

[4] Property zoned as RC-2 is meant to be used primarily to foster and protect agriculture, though limited residential development is permitted.

[5] Property zoned as RC-5 is meant to be used primarily for residential development in appropriate rural areas. Thus both low-density residential uses (one single family dwelling per every two acres) and agricultural uses are permitted.

Issue 1-054 zoned as DR-1, rezoning nearly all the remaining 274 acres, including Acorn's property, as RC-5.  As a consequence of this change, Baltimore County withdrew its earlier appeal on October 8, 2008 on grounds of mootness, stating that the change precluded compliance with the court's order, because RC-5 requires a particular water and sewer classification different from that contained in the 2004 reclassification recommendation.

Acorn filed suit in the Circuit Court for Baltimore County on January 23, 2009, alleging that the CZMP, as applied, was preempted by state law and unconstitutional under both the Maryland and federal constitutions, and sought a declaratory judgment to that effect.  Upon motion by Baltimore County, the suit was removed to this court on February 20, 2009.

## **ANALYSIS**

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks and alterations omitted). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir.1997).  To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).  Thus the plaintiff's obligation is to set forth sufficiently the

4

"grounds of his entitlement to relief," offering more than "labels and conclusions." *Id.* (internal quotation and alterations omitted); *see Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001) ("the presence [in a complaint] . . . of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support" the necessary legal finding).

In its complaint, Acorn claims that Baltimore County's rezoning of its property to RC-5 was unlawful because: (1) it was an action preempted by state law; (2) it deprived Acorn of due process of law, in violation of both the state and federal constitutions[6]; and (3) it amounted to an unconstitutional taking, also in violation of both the state and federal constitutions.[7] As an initial matter, Acorn's first claim must be dismissed because state law preemption does not apply here. Acorn contends that Baltimore County's rezoning is preempted by Maryland state law because, as a general matter, Maryland has "exclusive dominion over the entire field of water and sewer plans" (Compl. ¶ 43), and because this particular rezoning conflicts with the state-required water and sewer master plan for Baltimore County. (Compl. ¶ 42.) The first contention is disproved by the plain text of the Maryland Code, however, which explicitly gives charter counties

---

[6] Because Acorn does not specify in its complaint which constitution it is citing for its due process violation claim (Compl. ¶ 54), this court will assume it is relying on both the Due Process Clause of the Fourteenth Amendment to the federal constitution and Maryland's state constitutional equivalent, Article 24 of the Maryland constitution's Declaration of Rights. *Cf. Koshko v. Haining*, 921 A.2d 171, 194 n. 22 (Md. 2007) ("Our precedent states clearly that the Maryland and Federal due process provisions have been read '*in pari materia*'.").

[7] Acorn also asserts, as part of its substantive due process count, that Baltimore County's rezoning was an unlawful exercise of its police powers under the Maryland constitution. (Compl. ¶ 52.) It is settled law in Maryland that the promulgation and enforcement of zoning regulations by its charter counties and Baltimore City constitute a valid exercise of their police powers. *See Poe v. City of Baltimore*, 216 A.2d 707, 712 (Md. 1966); *Stevens v. City of Salisbury*, 214 A.2d 775, 778-81 (Md. 1965). Therefore this claim is without merit.

concurrent authority over water and sewer plans.  Md. Code Ann., Envir. § 9-502(c) ("Any rule or regulation adopted under [the water and sewer] subtitle does not limit or supersede any other county, municipal, or State law, rule, or regulation that provides greater protection to the public health, safety, or welfare."); *accord* Md. Code Ann., Art. 23A, § 2(b)(36)(ii) ("It has been and shall continue to be the policy of this State that planning and zoning controls shall be implemented by local government."); Md. Code Regs. 26.03.01.00 ("It is the intent of these [state] regulations to require the governing body of each county . . . to develop water supply and sewerage systems so as to be consistent with county comprehensive planning."); *see Ad + Soil, Inc. v. County Comm'rs of Queen Anne's County*, 513 A.2d 893, 906-07 (Md. 1986) (finding no state law preemption in dispute over county sewage zoning).  The second contention fails because charter counties have no statutory obligation to conform their comprehensive zoning to their water and sewer master plans.  The Maryland Code does indeed require counties to develop a water and sewer master plan, Md. Code Ann., Envir. § 9-503(a), but it does not require these to be legally binding documents.  *See* Baltimore County Master Plan 2010 at 3 ("The plan is intended to serve as a reference document . . . .").  As the Maryland Court of Appeals has stated: "There is no requirement that the comprehensive plan adopted by the legislative body must conform to the recommendations of the Master Plan[.] . . . . While it is true that other jurisdictions have by statute required that zoning ordinances be in accordance with the master plan, Baltimore County has not."  *Nottingham Village, Inc. v. Baltimore County*, 292 A.2d 680, 687-88 (Md. 1972) (internal citation omitted); *see People's Counsel for Baltimore County v. Beachwood I Ltd. P'ship*, 670 A.2d 484, 499 (Md. Ct. Spec. App. 1995).

Acorn's remaining two claims, to the extent they allege state constitutional violations,

must be dismissed because Acorn has failed to exhaust applicable state administrative remedies. Likewise, to the extent these two claims allege federal constitutional violations, Acorn's failure to exhaust makes them unripe for review. These claims will be addressed in turn.

Where, as here, a party seeks a declaratory judgment pursuant to Maryland Code, Courts and Judicial Proceedings Article, § 3-401 *et seq.* (*see* Compl. ¶¶ 9, 45.C, 56.C, & 68.C), the law is clear that the party must first exhaust whatever avenues for relief are available under state law prior to pressing its claims in court. Md. Code Ann., Cts. & Jud. Proc. § 3-409(b) ("If a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed in lieu of a proceeding under this subtitle."). This administrative exhaustion requirement applies to zoning suits against Maryland's charter counties. *See Maryland Reclamation Associates, Inc. v. Harford County*, 855 A.2d 351, 358-59 (Md. 2004) (*MRA III*) (stating, in a zoning case: "A fundamental precept of administrative law is the requirement that exclusive or primary administrative remedies ordinarily be exhausted before bringing an action in court."); *Holiday Point Marina Partners v. Anne Arundel County*, 707 A.2d 829, 834 (Md. 1998) ("This Court has consistently held that, where there exists a remedy before a charter county's board of appeals under Art. 25A, § 5(U)[8], an aggrieved party must invoke and exhaust

---

[8] Section 5(U) gives charter counties the express power to enact laws establishing a county board of appeals tasked with reviewing, among other matters, "[a]n application for a zoning variation or exception or amendment of a zoning ordinance map," prior to their review by a court. Md. Code Ann., Art. 25, § 5(U); *see id.* § 5(X) (giving charter counties the express power to enact laws "relating to zoning and planning" that include "[t]he power to provide for the right of appeal of any matter arising under such planning and zoning laws to the circuit court, except as is provided in § 5(U)").

the administrative and judicial review remedy provided by § 5(U).").[9]

Baltimore County has established by statute an administrative process that property owners should follow when they are dissatisfied with a particular zoning classification achieved through a recent comprehensive zoning map process, namely the zoning reclassification petition process. Baltimore County Code, § 32-3-501 *et seq.* A dissatisfied owner may seek to reclassify its property by submitting a petition to the Baltimore County Board of Appeals, a body tasked with hearing challenges to zoning determinations. Baltimore County Charter, § 602.a. Upon review of the petition, the Board of Appeals has the authority to grant the petition if it meets the criteria set forth by statute. *Id.* § 32-3-502; *see id.* § 32-3-510 (discussing the findings necessary for zoning reclassification); *see also* Baltimore County Charter, § 602.e (giving the Board of Appeals "original and exclusive jurisdiction over all petitions for reclassification"). This review process is meant to encompass zoning challenges brought on state and federal constitutional grounds. *See MRA III*, 855 A.2d at 362 ("[the plaintiff's] failure to exhaust administrative remedies, before bringing this judicial review action, applies to the federal constitutional issues as well as the state constitutional and nonconstitutional issues"); *see also Evans v. County Council of Prince George's*, 969 A.2d 1024, 1033-34 (Md. Ct. Spec. App. 2009) (in a zoning challenge brought on constitutional grounds, noting a limited constitutional exception to the administrative exhaustion requirement in Maryland, but holding nonetheless that "the constitutional exception does not apply to enable the citizens to bypass the requirement that they

---

[9] The court notes that *Holiday Point* was decided when § 5(U) included language stating that review by the county board of appeals, where established, would be the "exclusive" remedy. Now this form of review is understood as the "primary," though maybe no longer "exclusive," remedy. *See MRA III*, 855 A.2d at 364 n.6.

exhaust administrative remedies"); *Prince George's County v. Ray's Used Cars*, 922 A.2d 495, 497 & 506 (Md. 2007).  Indeed, Maryland courts have repeatedly stressed that administrative bodies, such as boards of appeals, are fully competent to rule on constitutional issues. *See, e.g.*, *Ray's Used Cars*, 922 A.2d at 506; *Holiday Point Marina Partners*, 707 A.2d at 834 (collecting cases).

It is undisputed that Acorn has not submitted a petition for zoning reclassification with the Board of Appeals (i.e., to reclassify the property as DR-1 with the desired water and sewer classifications), which it has had ample opportunity to do.[10]  Accordingly, Acorn has failed to exhaust its administrative remedies.  Its state constitutional claims shall be dismissed on this basis.  *See Maryland Reclamation Associates, Inc. v. Harford County*, 677 A.2d 567, 577-78 (Md. 1996) (*MRA II*) (holding that lower court should have dismissed plaintiff's state constitutional claims for failure to exhaust where plaintiff had failed to apply to the county Board of Appeals for a variance before bringing its claims in court); *see also Gingell v. Bd. of County Comm'rs for Prince George's County*, 239 A.2d 903, 905 (Md. 1968) (affirming lower court's dismissal of state constitutional zoning challenge for failure to exhaust where plaintiff still had opportunity to petition for reclassification); *Poe*, 216 A.2d at 711 & 713-14 (affirming lower court's dismissal of state constitutional zoning challenge for failure to exhaust where

---

[10] The Board of Appeals considers zoning reclassification petitions on a cyclical basis, allowing those seeking zoning reclassification to submit petitions during specific intervals each year.  Baltimore County Code, § 32-3-504.  In the time since the Council completed the 2008 CZMP, Acorn could have submitted a petition for zoning reclassification by March 2, 2009 to be reviewed as part of Period I, *id.* § 32-3-504(b)(1)(i) (defining the term of Period I as April 16 to May 31); *id.* § 32-3-504(c) (requiring petitioners to file reclassification petitions no later than 45 days before the beginning of the cycle), and had a hearing on the petition as early as September 1.  *Id.* § 32-3-508(c) (requiring hearings on reclassification petitions during Period IV); *id.* § 32-3-504(b)(1)(iv) (defining the term of Period IV as September 1 to December 31).

plaintiff had not applied for a special exception).

Exhaustion of state administrative remedies is not required in order to press federal constitutional claims.  *See Felder v. Casey*, 487 U.S. 131, 146-47 (1988) (citing *Patsy v. Bd. of Regents of Florida*, 457 U.S. 496 (1982), for the proposition that "plaintiffs need not exhaust state administrative remedies before instituting § 1983 suits in federal court"); *MRA II*, 677 A.2d at 575 (finding it "appropriate for a court to consider [constitutional zoning] arguments regardless of the failure by [plaintiff] to invoke and exhaust administrative remedies"). Nonetheless, by failing to exhaust these remedies before coming to federal court, an owner offers the court no final administrative action to review.  It would be premature for this court to rule on Acorn's substantive due process claim until it has followed the statutorily-provided zoning reclassification petition process through to its conclusion.  Likewise, it would be premature for the court to rule on Acorn's takings claim until the Board of Appeals has ruled with finality on whether to retain the zoning change that Acorn alleges creates the unconstitutional taking.  *See Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985) (in a zoning case, stating: "[A] claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue.").  Accordingly, because Acorn has failed to administratively exhaust, its federal constitutional claims are not ripe.  *See Ray's Used Cars*, 922 A.2d at 501 n.7 (finding plaintiff's zoning challenge to be unripe to the extent it alleged federal constitutional violation because plaintiff had failed to exhaust administrative remedies); *MRA II*, 677 A.2d at 580-82 (finding plaintiff's as-applied federal constitutional challenges to county's land-use

ordinances to be unripe because plaintiff had failed to exhaust administrative remedies); *see also*

*Dorsey v. Bethel A.M.E. Church*, 825 A.2d 388, 398 (Md. 2003) (denying judicial review, in case in which plaintiffs sought a declaratory judgment invalidating Baltimore County approval of a land development plan, because no final Board of Appeals decision had issued approving or disapproving of defendant's development plan).

Acorn offers several arguments for why it either cannot or should not seek relief before the Board of Appeals prior to bringing this suit. First it argues that the very terms of the County Code preclude its seeking relief through the administrative zoning reclassification petition process. The County Code states that:

> Before property is reclassified on the official zoning map of the county, the Board of Appeals must find that:
> (1)    Except as limited by the terms of subsection (b) of this section:
>    (i)   A substantial change has occurred in the character of the neighborhood in which the property is located since the property was last classified; or
>    (ii)  That the last classification of the property was established in error; and
> (2)    The requested reclassification is warranted based on a consideration of the purposes of the Baltimore County Zoning Regulations and maps, including:
>    (i)   Population trends;
>    (ii)  Availability and adequacy of present and proposed transportation facilities, water-supply facilities, sewerage, solid-waste-disposal facilities, schools, recreational facilities, and other public facilities;
>    (iii) Compatibility of uses generally allowable under the requested classification with the present and projected development or character of the surrounding area;
>    (iv)  Any pertinent recommendation of the Planning Board or Office of Planning; and
>    (v)   Consistency of the current and requested classifications with the Master Plan, the county water and sewer plan, and the capital program.

Baltimore County Code, § 32-3-510(a). Essentially, then, Acorn must make two separate showings in its petition: (1) that the property has either substantially changed or was recently classified in error, *id.* § 32-3-510(a)(1); and (2) that a reclassification is warranted based on

11

considerations of the Baltimore County Zoning Regulations and maps, *id.* § 32-3-510(a)(2).  It would be straightforward for Acorn to argue that the requested reclassification is warranted under § 32-3-510(a)(2); it claims plausibly that the currently available water and sewer hookups are both inadequate for development, *id.* § 32-3-510(a)(2)(ii), and inconsistent with the county Master Plan, *id.* § 32-3-510(a)(2)(v), and it is armed with previous recommendations of the Planning Board in its favor, *id.* § 32-3-510(a)(2)(iv).  Since there appears not to have been any substantial change in the character of the neighborhood in which Acorn's property is located since it was last classified, however (indeed, this *lack* of change is part of the reason Acorn takes offense at the zoning change made in the 2008 CZMP), Acorn would also need to convince the Board of Appeals that the classification of its property as RC-5 was in error in order to satisfy § 32-3-510(a)(1).  This, Acorn asserts, it cannot do, because it views the classification as erroneous due to its creation of economic disadvantage (the foundation of its federal takings claim), and the County Code explicitly states that findings of classification error may not be based on "[e]conomic disadvantage resulting from the classification."  *Id.* § 32-3-510(d)(2)(i).

  By Acorn's own account, however, economic disadvantage is not the sole basis for its complaint of error.  Indeed, the core of Acorn's complaint appears to be that the Council erred in making this zoning change by failing to consider – and act consistently with – the previous recommendations of the Planning Board and other county agencies (Compl. ¶ 40), thereby violating state law (*id.* ¶¶ 42-44) and depriving Acorn of substantive due process (*id.* ¶¶ 53-54).  (*See* Pl.'s Opp. to Baltimore County Mot. to Dismiss at 2, 4-6, 8; Pl.'s Opp. to People's Counsel Mot. to Dismiss ¶¶ 5, 7, 17, & 20-23.)  This error, which had as only one consequence the creation of potential economic disadvantage, appears to be the type of error that the statute

instructs the Board of Appeals to consider when weighing a reclassification petition. *See* Baltimore County Code, § 32-3-510(d)(1) ("Before a property is reclassified on the basis of error, the Board of Appeals must find . . . that, at the time the last classification of the property was established, the County Council did not consider facts and circumstances then existing that were relevant to the decision."). Accordingly, the County Code does not appear to preclude Acorn from seeking review of the Council's zoning determination in a reclassification petition proceeding, even though a confiscation argument in itself might not be successful. *Cf. Stratakis v. Beauchamp*, 304 A.2d 244, 247 & 250-51 (Md. 1973) (discussing a Board of Appeals review of a property owner's reclassification petition, which contained within it a complaint of economic disadvantage).

Acorn next argues that it should not be compelled to seek relief through the zoning reclassification petition process because doing so would be futile or otherwise inadequate. (*See* Pl.'s Opp. to People's Counsel Mot. to Dismiss ¶ 28.) It is true that exhaustion of administrative remedies generally is not required where "resort to administrative procedures would be futile," *McDonald v. Centra, Inc.*, 946 F.2d 1059, 1063 (4th Cir. 1991), or where "the administrative remedy provided by the statutory scheme is inadequate." *Abington Ctr. Assocs. Ltd. P'ship v. Baltimore County*, 694 A.2d 165, 171 (Md. Ct. Spec. App. 1997). These exceptions are to be construed narrowly, however, *see Abington*, 694 A.2d at 171 (on inadequacy); *Dearden v. Liberty Med. Ctr., Inc.*, 542 A.2d 383, 386 (Md. Ct. Spec. App. 1988) (on futility), and courts have rarely held them applicable in zoning cases. *See, e.g.*, *MRA II*, 677 A.2d at 577 (finding resort to county board of appeals not to be futile despite fact that it was composed of the same county council members who opposed plaintiff's original permit application); *Poe*, 216 A.2d at

709-11 (finding resort to board of appeals not to be inadequate for plaintiff's as-applied challenge to the constitutionality of a Baltimore City zoning ordinance).[11]

Furthermore, contrary to the assertions of Acorn, Baltimore County's zoning reclassification petition process provides a means for review of the Council's zoning decision that is both independent and thorough. Regarding independence, the Board of Appeals' members are required by statute to be distinct from the members of the Council, and to be bipartisan in composition. Baltimore County Charter, § 601. Regarding thoroughness, if a party is dissatisfied with the decision of the Board of Appeals, it has the right to appeal that decision to the Circuit Court for Baltimore County, and then to the state courts of appeals. *Id.* § 604. In light of these facts and prevailing case law, the court finds Acorn's futility and inadequacy claims to be unwarranted.

Acorn argues finally that administrative exhaustion is not appropriate here because one of the main policy rationales underlying it – namely, the preferability of primary review by that entity best equipped with the relevant technical expertise – is inapplicable on these facts. *See*

---

[11] Plaintiff points to a trio of cases – *Shpak v. Mytych*, 190 A.2d 777 (Md. 1963), *McDonald*, and *Offen v. County Council for Prince George's County*, 625 A.2d 424 (Md. Ct. Spec. App. 1993), *rev'd on other grounds by* 639 A.2d 1070 (Md. 1994) – to bolster its claim that administrative exhaustion is not necessary here due to futility or inadequacy. In the first two cases, however, the courts – while noting these exceptions, *Shpak*, 190 A.2d at 779; *McDonald*, 946 F.2d at 1063 – nonetheless found them not to apply, and ordered the plaintiffs to pursue their administrative remedies before resorting to the court. *See Shpak*, 190 A.2d at 779 ("The appellees had a statutory [zoning] remedy which they might seek. It is necessary under our decisions that they pursue it. Nothing in the facts of this case indicate the need for the extraordinary action in by-passing the Board of Appeals."); *McDonald*, 946 F.2d at 1063-64. In the third case, *Offen*, the Maryland Court of Special Appeals did indeed find administrative exhaustion to be unnecessary. *Offen*, 625 A.2d at 429. That case, however, involved a plaintiff's appeal from a final decision by a state circuit court, unlike this case, where plaintiff has not even filed for zoning reclassification. Thus, *Offen* is inapposite to this case.

14

*Intercom Sys. Corp. v. Bell Atlantic of Maryland, Inc.*, 763 A.2d 1196, 1201 (Md. Ct. Spec. App. 2000); *Gingell*, 239 A.2d at 905.  Specifically, it argues that the Council has demonstrated a blatant disregard for the expertise of county agencies in its zoning decision, and therefore an administrative review in this case would not contain the benefit of zoning expertise.  Assuming *arguendo* that the Council ignored the expertise provided it by county agencies, it should again be stressed that the Council is not the entity that would entertain Acorn's petition for zoning reclassification.  That function belongs to the independent Board of Appeals, which is statutorily required to consider recommendations of county agencies like the Planning Board in its review of petitions for zoning reclassification.  Baltimore County Code, § 32-3-510(a)(2)(iv).  Accordingly, this argument lacks merit.

## **CONCLUSION**

For the foregoing reasons, defendants' motions to dismiss will be granted.  A separate Order follows.

\_\_August  28,  2009_____                    _____/s/_____
Date                                                                      Catherine C. Blake
                                                                          United States District Judge

15